IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TAYR KILAAB AL GHASHIYAH (KHAN),
f/n/a JOHN CASTEEL,

          Plaintiff,                      OPINION AND ORDER

      v.                                        07-cv-308-bbc

MATTHEW FRANK, RICHARD SCHNEITER,
ANDREW JONES, JOHN SHARPE,
THOMAS TAYLOR, MICHAEL HANFIELD,
LARRY PRIMMER, RICK MICKELSON,
DANE ESSER and MATTHEW SCULLION,[1]

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this prisoner civil rights suit brought under 42 U.S.C. § 1983, plaintiff Tayr Kilaab al Ghashiyah is proceeding on claims that defendants violated his constitutional rights by subjecting him to an improper strip search and placing him in cruel and unusual cell conditions. Defendants' motion for summary judgment on each of these claims is ripe for

---

[1] In his complaint, plaintiff identified a number of the defendants as "Jailor" followed by their last names. I have amended the caption to reflect the full names of the defendants as identified in their summary judgment materials.

1

review. Because plaintiff has failed to show that a reasonable jury could find in favor of him on any of his claims, defendants' motion will be granted. (Plaintiff has raised other issues in his summary judgment materials that are unrelated to the claims on which he is proceeding. I have disregarded any matters that are not part of this lawsuit.)

Two other motions filed by plaintiff are before the court. First, plaintiff has moved to strike defendants' reply brief as untimely. This motion will be denied because defendants requested and received additional time from the court to file their brief. Dkt. ##111 and 113. (However, I have not considered defendants' "supplemental" proposed findings of fact that they submitted with their reply brief. Dkt. #118. That filing is not permitted by this court's summary judgment procedures because plaintiff did have an opportunity to respond to it.) Second, I must deny plaintiff's motion for sanctions. Although he argues that sanctions are appropriate because defendants' motion for summary judgment is frivolous, it is plaintiff's motion for sanctions and not defendants' motion for summary judgment that has no legal merit.

From the parties' proposed findings of fact and the record, I find the following facts to be undisputed.

UNDISPUTED FACTS

Plaintiff is a prisoner at the Wisconsin Secure Program Facility in Boscobel,

Wisconsin. On May 1, 2007, defendant Rick Mickelson, a sergeant at the prison, directed defendant Andrew Jones, a correctional officer, to conduct a search of plaintiff's cell. During the search, plaintiff was placed in a "strip cell," a temporary holding cell that does not have a toilet. This occurred at approximately 3:45 pm. (Plaintiff disputes the time but he does not say whether he was placed in the cell earlier or later and he does not cite any evidence to contradict defendants' proposed fact.)

At some time later in the day, plaintiff defecated and urinated in his cell. (It is not clear whether plaintiff disputes defendants' proposed fact that plaintiff never asked to use the bathroom while he was in the strip cell. Plaintiff does not say explicitly in his proposed findings of fact or his affidavit that he made such a request. Instead, he avers that defendants John Sharpe, Larry Primmer, Mickelson and Jones "declined to allow the plaintiff to use the toilet facility." Aff. of Plt., dkt. #106, ¶51. Also plaintiff says in his proposed findings of fact that he was "subjected to the smell of this waste for another five hours," dkt. #104, at ¶17, but the evidence he cites does not indicate how long he remained in the cell.)

Defendant Jones ordered plaintiff to cut his fingernails because they were too long and he handed plaintiff a set of fingernail clippers. Jones left and returned a short time later to check plaintiff's progress. When plaintiff showed Jones his hands, Jones concluded that at least one of the fingernails was still too long. Plaintiff refused orders to clip his fingernails from defendants Jones, Mickelson, John Sharpe and Larry Primmer. Each of these

3

defendants is a correctional officer at the prison.

Defendant Primmer decided to place plaintiff in controlled segregation and he assembled a cell extraction team to assist in the move. At 9:35 pm, defendants Dane Esser and Matthew Scullion (both correctional officers) were called to participate in the cell extraction. Four other officers, including defendant Thomas Taylor, were part of the team as well.

With the team assembled in front of plaintiff's cell, Primmer asked plaintiff whether he would comply with the order to be moved and to clip his fingernails. Plaintiff said he would comply with the order to be moved but he would not clip his fingernails. When plaintiff continued to refuse orders by Primmer to cut his fingernails, plaintiff was ordered to place his hands through the slot in the door so that he could be handcuffed. Plaintiff complied with this order but refused to open his hands to allow staff to check for contraband. Minimal struggle ensued before plaintiff complied with the order to open his hands and the wrist restraints were secured. (The parties dispute the nature of the struggle. Plaintiff says that defendants "forcibly pulled" his arms through the trap while defendants say that plaintiff grabbed defendants' Esser's and Scullion's hands and would not let go. Although defendants submitted a video of the incident, I cannot determine which party is right because of the number of officers in front of the cell door, making it impossible to see exactly what happened during the moment in question.) Plaintiff did not show any signs of

4

pain during the restraint procedure.

The officers opened plaintiff's cell door and secured leg restraints on him after he complied with an order to back out of the cell and kneel down. Plaintiff was taken to another cell where he again kneeled down as defendant Taylor clipped plaintiff's finger nails. Because plaintiff again refused to open his hands, defendants Esser and Scullion used "compliance holds" on plaintiff to force his hands open, applying two seconds of pressure on his wrist.

Before plaintiff was placed in the cell, the officers conducted a strip search of plaintiff. This is the common practice at the prison any time a prisoner leaves or enters controlled segregation status to insure that the prisoner does not have any contraband. Because plaintiff's hands and legs were restrained, plaintiff could not assist with the search. Defendant Taylor cut off plaintiff's clothes and conducted the search, which included running his hand through plaintiff's hair, inspecting the inside of plaintiff's ears and mouth, spreading plaintiff's buttocks and lifting his penis. (The parties dispute whether one of the officers placed his finger in plaintiff's rectum.) Again, plaintiff showed no signs of pain during the search. After the search was completed, plaintiff's leg restraints were removed and he was placed in the cell.

Plaintiff was still naked when he was placed in the cell. Correctional officers, including defendant Michael Hanfield offered him socks and underwear several times;

5

plaintiff refused the offers. Consistent with prison policy, defendants did not offer plaintiff additional clothes. When a prisoner is placed in controlled segregation as a result of disruptive behavior, there is a concern that the prisoner may use a shirt or pants to cover the window in the cell to prevent officers from monitoring him. Plaintiff was cold while he was in the controlled segregation cell. He spent 9 hours and 15 minutes in controlled segregation status.

On May 2, 2007, plaintiff completed a health services request form in which he wrote, "I DO NOT NEED TO SEE HEALTH SERVICE STAFF."

Defendant Matthew Frank was Secretary of the Department of Corrections during the events that gave rise to this lawsuit; defendant Richard Schneiter is a correctional services manager.

## OPINION

### A. Strip Search

In his complaint, plaintiff challenged the constitutionality of the decision to strip search him, but I dismissed this claim in an order dated July 13, 2007, dkt. #3, for plaintiff's failure to state a claim upon which relief may be granted. A search of a prisoner is unconstitutional only if it was "conducted in a harassing manner intended to humiliate and inflict psychological pain." Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003). Because

6

plaintiff's own allegations demonstrated that defendants conducted the search for the purpose of detecting contraband, I did not allow him to proceed on that claim. Although plaintiff continues to argue that the search was unnecessary, that claim is no longer part of the case. In any event, the facts only confirm my conclusion in the screening order. To plaintiff it may seem unfair and unnecessary to use any force as a result of a refusal to clip one's fingernails, but that is not the standard this court must apply. Once plaintiff refused to comply with the order, defendants were entitled to use force to insure compliance. Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984) (when correctional officer gives order to inmate "and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance").

I did allow plaintiff to proceed on three theories related to the manner in which the search was conducted. Plaintiff alleged that defendants "beat" him during the search, that they conducted a manual rather than a visual inspection of his anus and genitals without a legitimate reason and that they purposely conducted the search where other prisoners could see him. These allegations suggested that even though the decision to search plaintiff was valid, the manner was not, because defendants may have used excessive force or tried to humiliate plaintiff during the search. Thus, I allowed plaintiff to proceed against those officials who he alleged had participated in the search, were present and failed to intervene or were responsible for the method of the search by failing to train the other officers.

7

Although plaintiff continues to adhere to the view of the search he advanced in his complaint, the video submitted by defendants demonstrates that they did not use excessive force against him. None of the officers involved in the search ever struck or otherwise harmed plaintiff. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) (in excessive force case, concluding that lower court erred in accepting facts as alleged by plaintiff when they were discredited by videotape). Although the video does not resolve all factual disputes between the parties regarding the amount of forced used, it is clear that whatever discrepancies remain would not permit a reasonable jury to find that any officer used excessive force in violation of the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 321 (1986).

The same is true with respect to plaintiff's claim that defendants purposely conducted the search where other prisoners could see plaintiff naked. The video provides no evidence of this and plaintiff has adduced no other evidence to support his speculation. Ellis v. United Parcel Service, Inc., 523 F.3d 823, 827 (7th Cir. 2008) ("conjecture [is] not enough to create a genuine issue of material fact").

The facts do support plaintiff's allegation that defendants did not offer him an opportunity to comply with a visual inspection before subjecting him to a more intrusive

8

manual search. However, the facts show also that defendants had a legitimate reason for this. A mere visual inspection was not an option because plaintiff's hands were restrained as a result of his own recalcitrance. I cannot conclude that defendants violated the Constitution by declining to take the restraints off plaintiff while they conducted the search.

Because the officers who conducted the search did not violate plaintiff's constitutional rights, it follows that other officers cannot be held liable for failing to stop the search or for failing to provide adequate training. Defendants' motion for summary judgment must be granted with respect to plaintiff's claims related to the strip search.

### B. Cell Conditions

Plaintiff challenges different aspects of his confinement just before and after the strip search. With respect to the strip cell, plaintiff says that he was kept in the cell for several hours after he defecated and urinated in it. With respect to the controlled segregation cell, plaintiff says that he was naked and cold.

Defendant is not entitled to a trial with respect to either of these claims. First, plaintiff cannot prevail on his claim regarding the conditions of the strip cell even if I assume that plaintiff asked defendants to use the bathroom (which defendants deny), that plaintiff was in the cell for five hours after he defecated and urinated (even though plaintiff adduces no admissible evidence to support that allegation) and that officers could violate a prisoner's

9

Eighth Amendment rights by leaving him in a cell for several hours with feces and urine. To prevail on a claim under the Eighth Amendment, plaintiff must show that defendants were actually aware of the cruel and unusual conditions. Townsend v. Fuchs, 522 F.3d 765, 774 (7th Cir. 2008). Because plaintiff points to no evidence showing that any of the defendants knew that he had defecated and urinated in the cell, defendants are entitled to summary judgment on this claim.

Second, plaintiff cannot prevail on his claim that defendants violated his Eighth Amendment rights by placing him naked in a cold cell. The facts show that defendants offered to provide him with socks and underwear, but he refused both. Although these items would do little to protect plaintiff from the cold, plaintiff has adduced no evidence to suggest that the temperature of the cell in May was so cold that it subjected him to a substantial risk of serious harm, which is what he must prove to succeed on this clam. Compare Dixon v. Godinez, 114 F.3d 640, 644 (7th Cir. 1997) (summary judgment improper on Eighth Amendment claim when there was evidence that plaintiff was subject to near freezing temperatures over course of four winters).

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Matthew Frank, Richard

10

Schneiter, Andrew Jones, Michael Hanfield, Larry Primmer, Rick Mickelson, Dane Esser, Matthew Scullion and Thomas Taylor, dkt. #84, is GRANTED.

2. Plaintiff Tayr Kilaab al Ghashiyah's motion to strike to defendants' reply brief, dkt. #123, and plaintiff's supplemental motion to strike defendants' reply brief, dkt. #124, are DENIED.

3. Plaintiff's motion for sanctions, dkt. #125, is DENIED.

4. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 12th day of June, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

11